The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: July 29, 2026

**No. A-1-CA-41405**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**ROBERT LEE CHAVEZ,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GUADALUPE COUNTY**
**Flora Gallegos, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Associate Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**MEDINA, Chief Judge.**

{1} A jury convicted Robert Lee Chavez (Defendant) of six counts of assault upon a peace officer, misdemeanors, contrary to NMSA 1978, Section 30-22-21(A)(1), (B) (1971); three counts of dangerous use of explosives, third degree felonies, contrary to NMSA 1978, Section 30-7-5 (1963); and one count of resisting, evading or obstructing a police officer, a misdemeanor, contrary to NMSA 1978, Section 30-22-1(D) (1981). On appeal, Defendant argues (1) two double jeopardy violations, one resulting from his three convictions for dangerous use of explosives and the other resulting from his six convictions for assault on a peace officer; (2) improper comments during the State's closing argument amounted to misconduct that deprived Defendant of a fair trial and the district court's failure to grant a mistrial was error; (3) the evidence is insufficient to support his convictions for assault on a peace officer and dangerous use of explosives; and (4) evidentiary error in the admission of lapel and dashcam recordings. For the reasons set forth below, we reverse and remand with instructions to vacate two dangerous use of explosives convictions on double jeopardy grounds and to resentence Defendant accordingly. We affirm Defendant's remaining convictions.

**BACKGROUND**

{2}     On March 29, 2021, six officers arrived at Defendant's home to execute an arrest warrant. An officer knocked on the door, and Defendant answered but did not step out of the house. The officer informed Defendant that they had a warrant for his arrest. After a brief exchange, Defendant closed the door and shortly thereafter broke his front window from the inside. An officer saw Defendant light a fuse and alerted the other officers that he saw a bomb in Defendant's hand, causing the officers to retreat from the residence to take cover near their vehicles. Defendant threw the suspected bomb through the broken window and toward the officers. During approximately thirty seconds, Defendant threw a total of three suspected bombs out of the house that each detonated causing smoke and debris to fly. Each of the six officers testified that this sequence of explosions caused them to either fear for their lives or believe they were in danger. The State entered police lapel and dashcam recordings of the officers' encounter with Defendant, supplementing the testimony of the officers. The jury convicted Defendant of the aforementioned crimes. This appeal followed.[1]

---

[1]We withhold discussion of the statements made during the State's closing argument for the relevant analysis section below.

# DISCUSSION

## I.  Double Jeopardy

{3}  The Fifth Amendment to the United States Constitution provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy of life or limb." *State v. Porter*, 2020-NMSC-020, ¶ 1, 476 P.3d 1201 (omission, internal quotation marks and citation omitted). Likewise, the Double Jeopardy Clause of the New Mexico Constitution prohibits a court from "imposing multiple punishments for the same offense." *See* N.M. Const. art. II, § 15 ("[N]or shall any person be twice put in jeopardy for the same offense."). When "a defendant faces multiple charges under the same criminal statute for the same conduct"—as occurred here—we analyze for a unit of prosecution double jeopardy violation. *See State v. Bernard*, 2015-NMCA-089, ¶ 16, 355 P.3d 831.

{4}  In a unit of prosecution case, we focus on "whether a defendant has received more punishments than the number of punishments that the Legislature intended to authorize under the facts and circumstances of the case." *State v. Benally*, 2021-NMSC-027, ¶ 12, 493 P.3d 366. This is a two-part test, "both parts of which are concerned with legislative intent." *State v. Swick*, 2012-NMSC-018, ¶ 33, 279 P.3d 747. First, "we must analyze the statute to determine whether the Legislature has defined the unit of prosecution." *Benally*, 2021-NMSC-027, ¶ 13 (internal quotation marks and citation omitted). In doing so, we consider "all markers of legislative

intent . . . including the wording, structure, legislative history, legislative purpose, and quantum of punishment prescribed under the statutory scheme." *Id.* If the statute identifies the unit of prosecution, "our inquiry is complete." *Id.* ¶ 14. "However, if the statute remains insurmountably ambiguous as to its intended unit of prosecution, then we apply . . . the rule of lenity—and construe the statute in favor of the defendant." *Id.* (internal quotation marks and citation omitted). "The rule of lenity requires us to presume that the Legislature did not intend to separately punish discrete acts in a defendant's course of conduct absent proof that each act was in some sense distinct from the others." *Id.* ¶ 16 (text only) (citation omitted). "After applying the rule of lenity . . . , we then turn to the second step of our analysis." *Id.*

{5} The second step requires us to "determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Bernard*, 2015-NMCA-089, ¶ 17 (internal quotation marks and citation omitted). To determine whether a defendant's acts are sufficiently distinct, we consider the *Herron* factors: (1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by their conduct and utterances, and (6) the number of victims. *State v. Phillips*, 2024-NMSC-009, 12, 548 P.3d 51 (citing *Herron v. State*, 1991-NMSC-012, 15, 111 N.M. 357, 805 P.2d 624. "[T]he six *Herron* [factors] serve as a general policy for examining distinctness, but in

undertaking this analysis courts should examine the elements of the offense and any policy underlying the specific statute." *Benally*, 2021-NMSC-027, ¶ 19 (internal quotation marks and citation omitted). No *Herron* factor is dispositive, but instead all factors should be considered together in light of the facts and circumstances of each case. *See Herron*, 1991-NMSC-012, ¶ 15 ("[N]one of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under [the relevant statute].").

**A.    Defendant's Multiple Convictions for Dangerous Use of Explosives Violate Double Jeopardy**

{6}    As to Defendant's three convictions for dangerous use of explosives, he argues that (1) the statute does not specify a unit of prosecution and, as such, the rule of lenity applies; and (2) each of his three acts of setting off what he identifies as "fireworks" were not distinct such that his multiple convictions violate double jeopardy.

**1.    The Dangerous Use of Explosives Statute Does Not Define the Unit of Prosecution**

{7}    We begin our analysis by examining the plain language of the statute in order to ascertain legislative intent as to the unit of prosecution. *See Swick*, 2012-NMSC-018, ¶ 33. Section 30-7-5 defines dangerous use of explosives as "consist[ing] of maliciously exploding, attempting to explode or placing any explosive with the intent to injure, intimidate or terrify another, or to damage another's property."

"Whoever commits dangerous use of explosives is guilty of a third degree felony." *Id.*

{8} We observe that in Section 30-7-5, the Legislature refers to *explosive* in the singular, and we acknowledge that in certain circumstances a "legislative reference to an item in the singular suggests that each instance of that item is a separate unit of prosecution." *State v. Ramirez*, 2018-NMSC-003, ¶¶ 52-53, 409 P.3d 902 (internal quotation marks and citation omitted); *see id.* (reasoning that NMSA 1978, Section 30-6-1(D)(1) (2009) uses the singular noun *a child* indicating the unit of prosecution for the statute is *by child* while recognizing that had the Legislature used *any child* this would indicate "prohibition of conduct towards a particular class of persons"). Here, the dangerous use of explosives statute employs the term "*any*" *explosive* rendering the intended unit of prosecution ambiguous; the statutory language could be understood to reflect an intent to punish a person for each explosive or alternatively to impose a single punishment for conduct involving a class of explosives. *See Benally*, 2021-NMSC-027, ¶ 26 (concluding that, in NMSA 1978, Section 30-22-16 (1986), the Legislature's use of "*any*" in the phrase "possessing any deadly weapon" renders ambiguous whether the unit of prosecution is each weapon possessed or the possession of a class of weapons); *State v. Olsson*, 2014-NMSC-012, ¶ 21, 324 P.3d 1230 (explaining that the use of the word "*any*" in NMSA 1978, Section 30-6A-3(A) (2016) criminalizing the possession of child

pornography "compounds the ambiguity" as to the unit of prosecution). Accordingly, we conclude that the plain language and structure of the statute are ambiguous as to the Legislature's intended unit of prosecution.

{9}     We next consider the legislative history, purpose, and the quantum of punishment prescribed by the statute in order to discern the intended unit of prosecution of Section 30-7-5. The language of Section 30-7-5 has remained unchanged since its enactment in 1963, and thus the legislative history provides no meaningful guidance. *Compare* 1963 N.M. Laws, ch. 303, § 7-4, *with* § 30-7-5. As to the purpose of Section 30-7-5, the State argues that "[d]iscretely identifiable objects, results or acts, or a single course of conduct *may* support more than one conviction" and further asserts that the Legislature intended to "punish the threat of indiscriminate harm and damage to persons and property posed by each explosive used rather than once for a single course of conduct in which multiple explosives were used." While we agree that Section 30-7-5 is intended to deter the threat of or actual indiscriminate harm or threat of harm and damage to persons and property caused by explosives, we do not agree that this general purpose resolves the question of legislative intent or establishes, as a matter of law, the Legislature intended a unit of prosecution based on each individual explosive used. *See Phillips*, 2024-NMSC-009, ¶¶ 19-20, (acknowledging the state's characterization of the purpose of aggravated battery with a deadly weapon under NMSA 1978, Section 30-3-5 (1969)

as protecting bodily integrity but concluding that such a purpose alone does not, by itself, establish that an assault involving multiple weapons is necessarily nonunitary and proceeding to analyze whether each act was distinct); *cf. Olsson*, 2014-NMSC-012, ¶ 21 (reasoning "the multiple interpretations argued by the parties" that include analyses of legislative intent or context for the use of the word "*any*" in statutes from other jurisdictions "only highlight the lack of clarity"). Finally, the Legislature's decision to classify Section 30-7-5 as a third degree felony carrying a sentence of three years does not resolve the ambiguity presented in the language of the statute or clarify the Legislature's intended unit of prosecution.

{10}     The wording and structure of the dangerous use of explosives statute are ambiguous as to the intended unit of prosecution, and that ambiguity is not resolved through consideration of the statute's history, purpose, or the quantum of punishment prescribed. *See State v. Benally*, 2021-NMSC-027, ¶ 35. As we have "reasonable doubts about the intended unit of prosecution" under Section 30-7-5, the rule of lenity requires that the statute be construed in Defendant's favor. *See Benally*, 2021-NMSC-027, ¶ 36. Thus, multiple punishments are permissible only if Defendant's use of each explosive is separated by sufficient indicia of distinctness establishing separate and discrete acts. *See id.*

## 2. There Are Insufficient Indicia of Distinctness

{11} Applying the *Herron* factors, we conclude that there are insufficient indicia of distinctness to justify multiple punishments under the facts of this case. Defendant stood in the front room and threw three devices towards six officers with no intervening events. All three devices exploded within a span of thirty seconds. Prior to the first explosion and throughout this brief interval, the officers were either retreating from the front of the residence or had taken cover behind their vehicles parked nearby. During this entire period, Defendant remained positioned at the front window and threw the devices into the same general area without any intervening events. Neither the nature of the devices nor the location of the officers materially changed. In sum, Defendant's conduct consisted of the ignition and deployment of three explosive devices in a single continuous thirty second episode. *See State v. Mares*, 1991-NMCA-052, ¶¶ 26-27, 112 N.M. 193, 812 P.2d 1341 (determining, based on the *Herron* factors, that a number of battery convictions occurring across one uninterrupted violent rampage were violative of double jeopardy); *State v. Handa*, 1995-NMCA-042, ¶¶ 22-27, 120 N.M. 38, 897 P.2d 225 (concluding only one assault with intent to commit a violent felony upon a peace officer was committed where the defendant fired three shots at an officer); *cf. State v. Gonzales*, 1992-NMSC-003, ¶¶ 8-9, 113 N.M. 221, 824 P.2d 1023 (concluding conduct was unitary where multiple gunshots were fired into a truck in rapid succession

"[b]ecause the shots were not separated by either time or space" (internal quotation marks omitted)), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426.

{12} We conclude that these acts were not sufficiently distinct from one another to warrant separate punishments. We therefore hold that two of Defendant's convictions for dangerous use of explosives must be vacated on double jeopardy grounds.

**B.      Defendant's Multiple Convictions for Assault on a Peace Officer Do Not Violate Double Jeopardy**

{13} Defendant next argues that his six convictions of assault on a peace officer violate double jeopardy. Defendant contends that the unit of prosecution is ambiguous and requests that we apply the rule of lenity and vacate five of his convictions. Defendant acknowledges that each conviction arose from his act of throwing explosive devices at the officers who were outside his residence and that, in *State v. Roper*, 2001-NMCA-093, ¶ 12, 131 N.M. 189, 34 P.3d 133, this Court held that the defendant's two convictions for aggravated assault based on the defendant's act of pointing a gun at two victims did not violate double jeopardy. Defendant nevertheless contends that *Roper* was incorrectly decided.[2]

---

[2] Alternatively, Defendant contends *Roper* is distinguishable because the evidence that Defendant was aware of each officer's presence "relies on surmise." However, the holding in *Roper* does not turn on the defendant's awareness of the presence of multiple victims. *See id.* ¶¶ 10-13. Instead, the significance of the

{14}     We first address Defendant's claim under *Roper*. Defendant was convicted under Section 30-22-21(A)(2) with one count of assault upon a peace officer for each of the six officers present at the scene. The statute proscribes "any unlawful act, threat or menacing conduct which causes a peace officer while he is in the lawful discharge of his duties to reasonably believe that he is in danger of receiving an immediate battery." *Id.* As we explained in *Roper*, the assault statute protects against mental harm caused by placing another in fear. *See* 2001-NMCA-093, ¶ 12. Accordingly, where a defendant's conduct places multiple victims in reasonable apprehension of an immediate battery, separate convictions for each victim do not offend double jeopardy principles. *See id.* That rule applies here. Defendant's conduct was directed at six officers and supported six separate convictions under Section 30-22-21(A)(2).

{15}     We are unpersuaded by Defendant's attempt to convince this Court that *Roper* conflicts with *State v. Castañeda*, 2001-NMCA-052, 130 N.M. 679, 30 P.3d 368, and *Ladner v. United States*, 358 U.S. 169 (1958). In *Castañeda,* we held that driving while intoxicated with three unrestrained children in the vehicle supported only one count of child abuse because the Legislature intended that statute to punish conduct that "may cause harm." 2001-NMCA-052, ¶¶ 17-18. In *Roper*, we rejected the notion

---

victims' fear is the focus of the double jeopardy analysis. *See id.* ¶¶ 12-13. Accordingly, we will address Defendant's argument as to his awareness of the number of officers present as a challenge to the sufficiency of the evidence.

that *Castañeda* supported the defendant's position; we drew a distinction between the legislative intent behind the child abuse statute and the legislative intent behind the assault statute. *See Roper*, 2001-NMCA-093, ¶¶ 11-12. This distinction is not challenged by Defendant. We therefore decline to consider this argument further.

{16}     We are also unpersuaded by Defendant's citation to *Ladner*. As the State correctly observes, *Ladner* construed congressional intent underlying a federal statute and does not control our analysis of legislative intent under New Mexico law for purposes of double jeopardy. *Cf.* 358 U.S. at 173-77 (addressing the intent of Congress when considering the legislative intent of a federal statute). Defendant does not provide any argument that we should treat *Ladner* as persuasive because the intent of our Legislature is the same as or similar to the intent of Congress.

{17}     To the extent Defendant asks us to overrule *Roper*, he has failed to demonstrate doing so is warranted. "Based on the importance of stare decisis, we require a compelling reason to overrule one of our prior cases." *See State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 24, 135 N.M. 375, 89 P.3d 47 (internal quotation marks and citation omitted). Whether to overturn precedent involves the consideration of a number of factors:

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed

in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*State v. Riley*, 2010-NMSC-005, ¶ 34, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by Montoya*, 2013-NMSC-020, ¶ 2. Defendant has not developed an argument demonstrating that *Roper* was wrongly decided, has proved unworkable, or otherwise satisfies any of the exceptional circumstances justifying departure from precedent. *See Riley*, 2010-NMSC-005, ¶ 34.

## II.     The Prosecutor's Closing Argument

{18}     Defendant next argues that statements made by the prosecutor during closing argument improperly appealed to the jury's sympathy, thereby denying Defendant a fair trial, and that the district court's denial of his motion for a mistrial was error. Specifically, Defendant contends that, over objection, the prosecutor improperly urged the jury to place themselves in the position of the officers outside Defendant's residence, thereby appealing to the jurors' emotions and effectively offering unsworn testimony that contributed to his convictions. The State responds that the prosecutor's comments were not improper, any possible impropriety was addressed by the curative instruction, and the district court did not abuse its discretion in denying Defendant's motion for a mistrial.[3]

---

[3]The State correctly notes that Defendant did not object when the challenged statements were made; instead, defense counsel raised objections at the conclusion

{19}    We begin by reviewing the relevant portions of the prosecutor's closing argument, Defendant's objections, and the district court's ruling and curative instruction.

{20}    The State's closing lasted approximately fifteen minutes. Both challenged statements occurred during the State's discussion regarding the charges of assault on a peace officer. The first statement was made approximately two minutes into the argument and lasted about fifteen seconds. The State argued,

> They thought they were going to be injured by these explosions and I'd ask you to watch the video, look at those explosions, *and put yourself in their position*. Do you think that if they would have been struck by one of those [explosives], could it have caused great bodily harm?

{21}    The second statement occurred approximately five minutes into the State's closing argument and lasted about twenty-five seconds. During that portion of the argument, the State asserted,

> They all testified that they felt their safety was threatened. And a reasonable person in the same circumstances of the officers would have had the same belief. And that goes to you. You're a reasonable person. Considering the evidence, looking at the videos, *would you feel that you were placed in fear of great bodily harm by his behavior had you been there on scene that day?*

Immediately following the State's closing argument, defense counsel objected that the prosecutor had "twice asked the jury to put themselves in the same shoes as the

---

of the State's closing argument. The State does not, however, contest preservation of the issue or argue that any standard other than abuse of discretion applies. We will therefore review for abuse of discretion.

officers . . . in order to appeal to them to sympathize with those officers and to abandon their objective sense." Defense counsel moved for a mistrial and, in the alternative, for a curative instruction directing the jury to decide the case based on an objective assessment of the evidence rather than on how they would feel if they were in the officers' position.

{22}    The district court considered Defendant's motions and, with Defendant's approval, issued the following curative instruction:

> Any suggestion that you as a jury should base your decision on anything other than your objective opinion regarding the facts in this case is inappropriate. This case must be decided upon the facts that you have heard in this court and the exhibits presented to you and your objective decision on what the facts presented to you putting aside your biases and prejudices in regards to that.

{23}    "When an issue of prosecutorial misconduct has been preserved by a specific and timely objection at trial, we review the claim of error by determining whether the [district] court's ruling on the claim was an abuse of discretion." *State v. Wildgrube*, 2003-NMCA-108, ¶ 20, 134 N.M. 262, 75 P.3d 862. "[I]n reviewing claims of prosecutorial misconduct, we determine whether the [district] court abused its discretion by denying a motion for a new trial based upon the prosecutor's conduct, by overruling the defendant's objection to the challenged conduct, or by otherwise failing to control the conduct of counsel during trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275P.3d 2110.

{24} We emphasize that "golden rule arguments"—arguments that invite jurors to put themselves in the position of the victims—are improper because they can cause jurors "to render a verdict based on emotion and not on the careful weighing of the evidence." *State v. Crawford*, 2026-NMCA-046, ¶ 37, 586 P.3d 382. Indeed, such arguments are "universally condemned because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.* (alterations, internal quotation marks, and citation omitted). Here, the prosecutor crossed that line by inviting the jurors to place themselves in the officers' position and asking whether had they been at the scene, would they have feared great bodily harm as a result of Defendant's actions. The dispositive question, therefore, is whether, under the circumstances of this case, the prosecutor's improper remarks warrant reversal.

{25} Our ultimate determination of this issue rests on whether the prosecutor's improprieties "had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *See id.* ¶ 23 (internal quotation marks and citation omitted). Three factors guide this Court's examination of prosecutorial misconduct within the context of closing argument. *See, e.g., State v. Sena*, 2020-NMSC-011, ¶ 16, 470 P.3d 227. These three factors include whether the prosecutor's statement (1) "'invade[d] some distinct constitutional protection,'" (2) was "'isolated and brief, or repeated and pervasive,'" and (3) was "'invited by the

defense.'" *Id.* (quoting *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348).

**{26}** These factors do not support reversal here. First, Defendant does not identify any "distinct constitutional protection" implicated by the prosecutor's statements. *See Sosa*, 2009-NMSC-056, ¶ 26. Second, the challenged statements were isolated, comprising approximately forty seconds of a fifteen-minute closing argument. Finally, although Defendant did not invite these statements, we are not persuaded that, in light of the district court's curative instruction and the brevity of the remarks, they "had such a persuasive and prejudicial effect on the jury's verdict that [D]efendant was deprived of a fair trial." *See Duffy*, 1998-NMSC-014, ¶ 46.

**{27}** Moreover, we recognize that "[b]ecause [district courts] are in the best position to assess the impact of any questionable comment, we afford them broad discretion in managing closing argument." *Sosa*, 2009-NMSC-056, ¶ 25. In exercising that discretion, district courts may remedy potential improprieties through curative instructions as occurred here at defense counsel's request. *See id.* We presume that the jury followed this curative instruction, *see State v. Fulton*, 2026-NMCA-025, ¶ 35, 585 P.3d 514, and Defendant has not sought to rebut this presumption. Based on two brief comments made during a fifteen-minute closing argument, the record does not support the conclusion that Defendant was deprived of a fair trial.

## III. Sufficiency of the Evidence

**{28}** We turn to Defendant's sufficiency of the evidence challenges. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

## A. Assault on a Peace Officer

**{29}** Defendant contends that the evidence was insufficient to establish that he "was even aware of the presence of each of the six named officers in the assault charges" and provides no further analysis. The State responds that the record, including video footage of the encounter at Defendant's residence, demonstrates that none of the six officers were concealed from Defendant's view and that sufficient evidence supports the jury's verdict on each count.

{30}     The jury was required to find, in part, that Defendant knew each officer was a peace officer.[4] The State presented evidence that two marked state police vehicles parked in front of Defendant's residence and that the responding officers—wearing combat greens that identified them as state police—repeatedly announced themselves as state police upon arrival, and that they were at Defendant's door to execute a warrant for his arrest. Video exhibits also depict Defendant opening the front door and engaging with the officers as these announcements were made.

{31}     Viewed in the light most favorable to the verdicts, this testimonial and video evidence supports a reasonable inference that Defendant knew the individuals at his door were police officers and that he was aware of the presence of all officers involved. Accordingly, sufficient evidence supports Defendant's six convictions for aggravated assault on a peace officer.

**B.     Dangerous Use of Explosives**

{32}     Defendant argues that the evidence was insufficient to establish the use of an explosive because the State presented "no expert testimony to establish that these [objects] were powerful enough to cause injury," or otherwise qualified as explosives. In effect, Defendant contends that (1) an expert is required to establish that the explosive potential of an object is powerful enough to cause injury; and (2)

[4]Although the written jury instructions do not appear in the appellate record, the district court's oral recitation of the instructions is preserved in the trial recording and provides the basis for our review.

only if an object is capable of causing injury may it be considered an "explosive" under Section 30-7-5. However, Defendant fails to develop any argument or cite any authority to support either of these contentions. Without such authority or analysis, we are unpersuaded that an expert was required to establish that the objects that produced an explosive sound, emitted smoke, and propelled debris through the air after Defendant lit and threw them out his window towards police officers were "explosives" under Section 30-7-5. *See* Rule 12-318 NMRA (outlining the briefing requirements for appeals before this Court); *see also State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (noting that appellate courts will not consider an issue if no authority is cited in support of the issue and assuming no such authority exists).

## IV.    Admission of Lapel and Dash Camera Recordings

{33}    Defendant argues that the district court abused its discretion by admitting the lapel and dashcam recordings. In his brief, Defendant fails to identify which lapel and dashcam recording was admitted in error, fails to cite the portion of the transcript where any objections to the admission of the recordings were made, fails to develop any argument in support of his contention that any of the lapel and dashcam recordings were admitted in error, and fails to cite authority in support of his claim. We therefore decline to review this issue. *See* Rule 12-318(A)(4) (stating that a brief in chief's "argument shall set forth a specific attack on any finding, or the finding

shall be deemed conclusive"); *State v. Dombos*, 2008-NMCA-035, ¶ 42, 143 N.M. 668, 180 P.3d 675 ("[N]o error is shown when a party fails to provide reference to the transcript or the record where the issue was raised below."); *Vigil-Giron*, 2014-NMCA-069, ¶ 60 (declining to consider issue where no authority is cited in support of the issue); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**CONCLUSION**

{34}    For the foregoing reasons, we reverse and remand to the district court to vacate two of the three dangerous use of explosives convictions and to resentence Defendant accordingly. Otherwise, we affirm.

{35}    **IT IS SO ORDERED.**


_____

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**


_____

**ZACHARY A. IVES, Judge**


_____

**KRISTOPHER N. HOUGHTON, Judge**